**Tamlin HENRY (aka Tam Henry) et al., Plaintiffs,**

v.

**RADIO STATION KSAN dba KSOL et al., Defendants.**

**No. C–70–2303–CBR.**

United States District Court, N. D. California.

April 5, 1974.

Ephraim Margolin, Arthur Brunwasser, San Francisco, Cal., for plaintiffs.

James A. Carter, Angell, Adams & Holmes, San Francisco, Cal., for defendants Radio Station KSAN dba KSOL, John F. Malloy and Alan P. Schultz.

Robert Le Prohn, San Francisco, Cal., for defendants International Brotherhood of Electrical Workers, Local 202–AFL–CIO and Edward John Bird.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

RENFREW, District Judge.

As originally filed, this action involved allegations of racial discrimination in employment practices and breach of contract by Radio Station KSAN dba KSOL ("KSAN") and its major owners and officers John F. Malloy and Alan P. Schultz and of racial discrimination, breach of contract, and breach of the duty of fair representation by defendants Local 202, International Brotherhood of Electrical Workers ("Local 202"), and its business agent, Edward John Bird arising out of the termination of plaintiffs by KSAN on September 21, 1970. The Court denied plaintiffs' motion for a preliminary injunction and subsequently entered a partial summary judgment in favor of defendant station owners Malloy and Schultz on the breach of contract and unfair representation claims.

On April 30, 1972, plaintiffs entered into a settlement agreement with defendants KSAN, Malloy and Schultz (referred to collectively in the agreement as "KEST"), in which plaintiffs stipulated "that, in fact, the reason for their termination was not based upon a discriminatory motive or purpose, that KEST has not, to their knowledge, engaged in discriminatory employment practices against plaintiffs or other persons, and that KEST has not violated the Constitution or any law of the United States or the State of California with respect to employment practices." Plaintiffs agreed to withdraw and not refile all charges filed with various agencies and courts arising out of their termination and to dismiss with prejudice the in-

stant suit against KEST. KEST agreed to pay plaintiffs $15,000 in full settlement of all claims against it arising out of this action. This stipulation of facts and agreement was signed by all of the plaintiffs and their counsel and by defendants Malloy, Schultz and KSAN and their counsel, and it was approved by the Court on July 20, 1972.

There then remained the claims against defendants Local 202 and Bird. In their trial brief plaintiffs acknowledge that Bird cannot be sued in his individual capacity in either the breach of contract or the unfair representation claim and agree that a dismissal on those claims as to Bird in his individual capacity is warranted. Plaintiffs continue to assert a breach of contract claim against Local 202. They do not allege that the Local breached any of the terms of the International Constitution or of the Local's by-laws. This claim appears to be based instead on the allegation that plaintiffs' termination by the radio station violated Section 12.-04(a) of the collective agreement between KSAN and Local 202. If this provision has been breached, such breach was by the employer, not the union. To the extent that the union may have failed to enforce this agreement for plaintiffs' benefit, such conduct under the circumstances of this case is governed only by plaintiffs' claim of unfair representation by Local 202. Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Humphrey v. Moore, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Bittner v. Roadway Express, Inc., 246 F.Supp. 62, 63 (W.D.Pa.1965).

▆▆ The parties agreed to a bifurcated trial and the liability aspect of the claims of breach of the duty of fair representation by Local 202 and of direct racial discrimination[1] by Local 202 and Bird were tried by the Court sitting without a jury on December 4, 5 and 6, 1973. Having considered all of the evidence and testimony submitted at the trial as well as the arguments and briefs of counsel, and the proposed findings of fact and conclusions of law submitted by the parties, the Court hereby enters the following Findings of Fact, Conclusions of Law, and Order.

### FINDINGS OF FACT

1. At all relevant times Local 202 was the collective bargaining representa-

---

[1]. At the trial plaintiffs sought to assert a claim against Local 202 and Bird on the ground that they acquiesced in the racial discrimination of KSAN in terminating plaintiffs. Since plaintiffs conceded in their settlement agreement, which was presented to the Court for its signature and filed with the Court, that the station had not discriminated against them, the Court ruled that plaintiffs could not adduce any evidence purporting to establish that KSAN had discriminated against them. While it has long been established that the law favors the settlement of controversies and therefore evidence of offers to settle and terms of settlement are not admissible in evidence, even the authorities which support that proposition do not preclude the admissibility at trial of an unqualified admission of fact not inseparably related to an offer of settlement as is present here. See McCormick, Law of Evidence (1954), pp. 157–158, 539–541. Although the settlement agreement itself sought to limit its applicability to only the claim against KSAN, it is the very conduct of KSAN with respect to plaintiffs which plaintiffs here sought to prove in order to establish defendant Local 202's and Bird's acquiescence. Here, there was no attempt to offer evidence at the trial as to the settlement agreement between plaintiffs and KSAN. Rather, the ruling of the Court did not permit plaintiffs to take a position completely contrary to plaintiffs' admission of fact set forth in the document approved by and filed with the Court. See Rule 11 of the Federal Rules of Civil Procedure. In addition, were plaintiffs able to offer evidence contrary to the facts in the agreement with respect to discrimination on the part of KSAN, there may be substantial prejudice to KSAN, a party no longer involved in the litigation, particularly in view of the licensing requirements of the Federal Communications Commission.

Moreover, when announcing its decision on this point, the Court offered plaintiffs an opportunity to present any authorities which indicated that the decision was in error. Plaintiffs did not submit any such authorities.

tive of technicians employed by KSAN which included individuals working in the following classifications: supervisor, chief engineer, full-time announcer-technicians, and part-time announcer-technicians.

2. In 1970 Local 202 had between 1200–1300 members. The Local was divided into two units: a service unit composed of persons employed as appliance repairmen and a broadcast unit composed of engineers, technicians and announcer-technicians. Approximately 60% of the membership of Local 202 was in the service unit and approximately 40% was in the broadcast unit. Of the total membership in Local 202, there were approximately 50 announcer-technicians, approximately 25 of whom were employed by radio stations in the Bay Area.

3. At all relevant times defendant Edward John Bird was business manager and agent of Local 202 and was acting within the course and scope of his duties as an officer and agent of Local 202. Defendant Bird was a member of the service unit of Local 202, and he had no experience as an announcer-technician or any training in that field.

4. At all relevant times Bird, as business manager for Local 202, was responsible for negotiating and administering the collective bargaining agreements in the broadcast industry to which Local 202 was a party.

5. For at least one year prior to September 21, 1970, plaintiffs, each of whom is a Black adult male, were employed as announcer-technicians by KSAN.

6. On March 16, 1970, plaintiff Tamlin L. Henry was appointed music and program director of station KSAN. From March 16, 1970, until September 20, 1970, he continued to perform the duties of an announcer-technician for thirty-three hours each week while de-voting thirty hours each week to his new position as music and program director.

7. At all relevant times plaintiffs were members of the bargaining unit represented by Local 202.[2]

8. On September 21, 1970, without prior notice, each plaintiff was dismissed from his employment by KSAN.

9. The decision by the management of KSAN to dismiss plaintiffs was based upon the change in broadcast format at the station from "soul music" to a middle-of-the-road "good music" format. Prior to making the decision to change the broadcasting format, the management of KSAN did not provide plaintiffs with an opportunity to audition for the new format, but did conclude from listening to tapes of plaintiffs' announcing under the "soul music" format that plaintiffs were not qualified to perform under the new format.

10. On September 21, 1970, Henry telephoned the office of Local 202 seeking to reach Bird. He was informed that Bird was out of the city and would return his call. Said call was returned at approximately 5:30 P.M. on September 21, 1970. Bird was informed by Henry of plaintiffs' dismissals.

11. Henry, acting for himself and on behalf of all plaintiffs, requested Local 202 to take steps in their behalf to regain their employment in the telephone conversation between Henry and Bird on September 21, 1973. Bird testified that the clear implication he obtained from speaking to Henry was that action on the part of Local 202 was requested. The Court finds that this telephone conversation between Henry and Bird constituted a request by plaintiffs to institute a grievance on behalf of plaintiffs against KSAN pursuant to the provisions of Section 3.01 of the collective bargaining agreement.

12. During the week in which the discharges occurred Bird was engaged in

---

2. Since the Court finds that Local 202 did not act in bad faith, dishonestly, or arbitrarily with respect to any of the plaintiffs, the question of whether or to what extent plaintiff Henry was a "supervisor," as that term is defined in 29 U.S.C. § 152(11), and therefore not covered by the duty of fair representation, need not be decided.

contract negotiations on behalf of announcer-technicians employed by four San Jose radio stations. When these negotiations were completed, Bird proceeded to Seattle, Washington, to attend the convention of the International Union. Upon his return from Seattle Bird was off work due to illness for approximately two weeks.

13. On September 24, 1970, Local 202's assistant business manager, Peter S. Cunha, received a telephone call from Henry who told Cunha that he and some others wanted to come down to Local 202's office the next morning. Cunha arranged to meet with Henry and any others at 9:00 A.M. the following day. Cunha was present at Local 202's office from 8:45 A.M. until approximately 3:30 or 4:00 P.M. on September 25, 1970. Neither Henry nor any other plaintiff appeared at that office on that day. When Cunha left the office, he told the office manager that if Henry called to tell him that Cunha would be available to meet on Monday or Tuesday of the following week. No calls were received from Henry nor any other plaintiff on the day on which the meeting had been arranged.

14. Henry did not call Local 202's office any time after September 24, 1970, and never appeared at the office at any time during regular office hours.

15. No plaintiff other than Henry ever telephoned or otherwise contacted Bird or any representative of Local 202 regarding his termination by KSAN.

16. There is no evidence that Cunha was unavailable to assist plaintiffs in pursuing any grievance filed in connection with their discharges.

17. On or about January 26, 1970, KSAN and Local 202 entered into a collective bargaining agreement governing the terms and conditions of employment of announcer-technicians employed by KSAN. At all relevant times this agreement was in full force and effect.

18. This collective bargaining agreement provides in pertinent part:

"11.07  CHANGE OF FORMAT

"In the event that Technicians are required to perform added duties due to the addition of FM, it is agreed that the Agreement may be immediately reopened on wages due to the change for those employees involved."

"12.04  DISCHARGE AND DISCIPLINE

"(a) Technicians may be discharged for just cause upon two (2) weeks written notice or pay in lieu thereof. Such written notice shall advise the Technician of the basis for the discharge. Technicians may also be disciplined for just cause including suspension without pay."

"12.05  SEVERANCE PAY

"Severance pay shall be paid Technicians whose employment is terminated except by resignation or dishonesty, serious insubordination, drunkenness on the job or failure to maintain good standing in the Union. The Technician so entitled to severance pay shall receive as such pay one weeks salary for each year of continuous employment with the Employer. Technicians terminated because of change of format shall have the above severance pay doubled."

19. There is no specific authorization in the collective bargaining agreement authorizing KSAN to discharge an announcer-technician because of change in format.

20. Henry was shop steward at the time the parties entered into the collective bargaining agreement. In this capacity he participated in the second of the two negotiating meetings between Local 202 and representatives of KSAN which resulted in the collective bargaining agreement.

21. Prior to the commencement of negotiations resulting in the agreement of January 26, 1970, announcer-technicians at KSAN had been made aware by KSAN management that a change in format was contemplated. The announcer-technicians were also made aware by

KSAN management that a format change could result in their terminations. In response, the announcer-technicians suggested to Bird that Local 202 propose one year's salary as compensation to any technician so terminated.

22. During the contract negotiations with KSAN, a proposal was submitted by the announcer-technicians dealing with the change in format problem requiring nine months' salary as payment to individuals terminated as the result of a change in format. This proposal was subsequently modified as part of the give and take of negotiations and resulted in the language found in Section 12.05 of the January, 1970 agreement.

23. During these contract negotiations there were no discussions between representatives of Local 202 and representatives of KSAN about the terminations resulting from a change in format being subject to the just cause provisions of Section 12.04 of the agreement.

24. The terms and conditions of the January, 1970, agreement were presented to the members of Local 202's bargaining unit and were ratified by them.

25. Only Local 202 may institute a grievance under Section 3.01 of the collective bargaining agreement. No grievance was instituted by Local 202.

26. Both defendant Bird and representatives of KSAN understood the January 26, 1970, collective bargaining agreement to permit termination of announcer-technicians without notice upon a change of format so long as the severance pay provision of the agreement was not violated. KSAN paid all severance pay required by Section 12.05 of the agreement.

27. No plaintiff filed internal union charges against defendant Bird, Local 202, or any representative of Local 202 as provided by Article XXVII, §§ 8–18 of the Constitution of the International Brotherhood of Electrical Workers.

28. There is no evidence that Local 202 acted arbitrarily, in bad faith or dishonestly in exercising its discretion not to process a grievance on behalf of plaintiffs with respect to their termination.

29. There is no evidence that race was a factor in Local 202's decision or in Bird's decision not to process a grievance on behalf of plaintiffs with respect to their termination.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction under 29 U.S.C. § 185 and under 28 U.S.C. § 1343(4).

2. Local 202 of the International Brotherhood of Electrical Workers, AFL–CIO, is a "labor organization" as defined by Section 2(5) of the Labor Management Relations Act, 29 U.S.C. § 152(5), and was at all times relevant hereto the certified collective bargaining representative of plaintiffs.[3]

3. As the exclusive bargaining representative, Local 202 was under a duty to represent fairly all its members, both in the conduct of collective bargaining and in the enforcement of the resulting collective bargaining agreement.

4. 'A union is allowed a wide range of reasonableness in serving the bargaining unit it represents, and it is, therefore, free to exercise its discretion in the handling of grievances. This broad freedom of action is, however, subject to an obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

5. A union breaches its duty of fair representation only when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith. To establish a violation of this duty, there must be substantial evi-

3. As to plaintiff Henry's alleged "supervisory" status, see note 2, *supra*.

27

dence of fraud, deceitful action or dishonest conduct.

6. Under the circumstances of this case the Court declines to impose on plaintiffs a requirement that they first must exhaust intra-union remedies before suing the union for a breach of the duty of fair representation.

7. Local 202's conduct with respect to the handling of plaintiffs' grievances in the matter of their terminations by KSAN was not arbitrary, discriminatory or in bad faith and therefore does not constitute a breach of its duty of fair representation.

8. No action for breach of the duty of fair representation lies against Bird in his individual capacity.

9. 42 U.S.C. § 1981 applies to private acts of racial discrimination by unions as well as by employers.

10. A person alleging a violation of 42 U.S.C. § 1981 need not exhaust the administrative remedies of the EEOC before seeking judicial relief.

11. Under the circumstances of this case the Court declines to impose on plaintiffs a requirement that they first must exhaust intra-union remedies before suing the union under 42 U.S.C. § 1981.

12. While proof of an intent to discriminate on racial grounds may not be required in a § 1981 claim, plaintiffs here have failed to prove that race was a factor influencing the conduct of Local 202 or of Bird in this matter.

13. Neither Local 202 nor Bird individually violated any of the civil rights of plaintiffs protected by 42 U.S.C. § 1981.

Accordingly, it is hereby ordered, adjudged and decreed that judgment be entered in favor of defendants Local 202, International Brotherhood of Electrical Workers, and Edward John Bird and against plaintiffs.