Joseph BALESTRERI, David Ferrante, and Richard Mora, Plaintiffs,

v.

WESTERN CARLOADING, a corporation and subsidiary of West Cartage, a corporation and subsidiary of Transway International, a corporation and Does I through X; International Brotherhood of Teamsters Local 85 and Does XI through XX; Tim Richardson, individually and as business manager of International Brotherhood of Teamsters Local 85, Defendants.

No. C–78–2223 SC.

United States District Court, N. D. California.

Feb. 8, 1980.

Joseph Balestreri, in pro. per.

David Ferrante, in pro. per.

Richard Mora, in pro. per.

Littler, Mendelson, Fastiff & Tichy, San Jose, Cal., for Western Carloading.

Murphy, Appenroot & Woods, San Francisco, Cal., for Local 85 and Tim Richardson.

## ORDER

CONTI, District Judge.

On September 19, 1978, plaintiffs, Joseph Balestreri, David Ferrante, and Richard Mora, filed a complaint pursuant to Labor-Management Relations Act § 301, *29 U.S.C. § 185* against (1) their former employer, Western Carloading (hereinafter WC); (2) their union, the International Brotherhood of Teamsters (hereinafter union); and (3) Mr. Tim Richardson, who was a business agent for Teamsters Local 85. Plaintiffs maintain that (1) the union, more specifically Local 85, failed adequately to represent plaintiffs with respect to their discharge by WC and (2) that WC breached its collective bargaining agreement with Local 85 when it wrongfully discharged plaintiffs. The matter is before the court on defendant union's Motion for Summary Judgment.

## I. SUMMARY JUDGMENT

The parties and the court are well aware that the standard for summary judgment is a strict one. Summary judgment shall not be rendered unless (1) the pleadings, depositions, answers to interrogatories, admissions on file, and the accompanying affidavits show that there is no genuine issue as to any material fact and (2) that the moving party is entitled to judgment as a matter of law. *F.R. Civ. P.* 56; *MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F.2d 486, 488 (9th Cir.), *cert. denied*, 429 U.S. 887, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976) (quoting *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543 (9th Cir. 1975)).

The party moving for summary judgment has the burden of clearly establishing the lack of any triable issue of material fact. It is not the function of the trial court at the summary judgment hearing to resolve any genuine factual issue, including credibility; and for purposes of ruling on the motion, all factual inferences are to be taken against the moving party and in favor of the opposing party. Discretion plays no real role in the granting of summary judgment. *See* 6 Moore's *Federal Practice* ¶ 56.15[8], at 56–642–643.

## II. BACKGROUND

This lawsuit stems from an altercation that occurred at 1:45 a.m. on September 22, 1977. Plaintiffs maintain that on that day, one of WC's supervisors, Mr. Ken·Lopes, attacked them with a knife. WC, on the other hand, contends that plaintiffs attacked supervisor Lopes. WC fired the three employees the following day.

These discharges were the subject of a grievance filed under the collective bargaining agreement and were pursued through arbitration by Local 85 on plaintiffs' behalf. After conducting a hearing, an impartial arbitrator, Mr. Sam Kagel, found that plaintiffs participated in an attack upon one of WC's supervisors (Lopes) and that all of the discharges were therefore proper under the labor contract. The arbitrator's decision is ordinarily final and binding on all parties. *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

## III. ALLEGATION OF INADEQUATE REPRESENTATION

Labor-Management Relations Act § 301, *29 U.S.C. § 185* provides, in pertinent part, that:

[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organization, may be brought in any district court of the United States.

Section 301 also contemplates suits by and against individual employees as well as between unions and employers. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976).

Collective bargaining contracts generally contain procedures for the settlement of disputes through mutual discussion and arbitration. Such was the case here. "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." *29 U.S.C. § 173(d).*

■ The Supreme Court has said, however, that Congress, in conferring upon employers and unions the power to establish exclusive grievance procedures, did not intend to confer upon unions such unlimited discretion to deprive injured employees of all remedies for breach of contract. *Hines, supra,* at 566, 96 S.Ct. at 1057. Thus, an employee can bring an action under Section 301, and thereby require the court to reach the merits of a final and binding grievance award, only if he can show that the union breached its duty of fair representation toward that employee. *Hines, supra; Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1966).

■ Plaintiff in such a case has a heavy burden since he must prove that the union conduct was arbitrary, discriminatory or in bad faith. *Vaca v. Sipes, supra,* at 190, 87 S.Ct. at 916. The Ninth Circuit has found that:

[a] showing of bad faith is not required, however; and a finding of arbitrary or perfunctory handling of an employee's grievance will be sufficient to show a violation of the union's duty .... The union is accorded great latitude, however, in the handling of employee grievances,

and the courts are hesitant to interfere with union decisions regarding the handling of employee grievances unless they show a reckless disregard for the rights of the individual employee.

*Ness v. Safeway Stores, Inc.*, 598 F.2d 558, 560 (9th Cir. 1979). Proof of union negligence or poor judgment in handling a grievance is not legally sufficient to support a claim of unfair representation. *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975); *Dente v. International Org. of Masters, Mates, & Pilots, Local 90,* 492 F.2d 10, 12 (9th Cir. 1973), *cert. denied,* 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974).

Defendant union maintains that based on undisputed facts and well-established legal precedent, Local 85 did not breach its duty of fair representation so that it is entitled to summary judgment. If the court grants Local 85's motion, the arbitrator's decision that the discharges were proper may not be set aside and no liability may be imposed on WC. Upon examination of the entire record, the court holds that defendant union's motion for summary judgment is granted.

In their complaint, plaintiffs enumerate the specific acts which they claim resulted in an arbitrary and bad faith representation by Local 85. First, plaintiffs maintain that union business agent Tim Richardson wrongfully informed WC that it could not discharge plaintiffs by telegram so that WC then issued conforming registered letters to each plaintiff and thereby fulfilled its contractual obligations. Second, plaintiffs claim that Duane Beeson, the attorney who was retained by the union and who represented them during the arbitration hearing, failed to handle the matter properly and thereby breached the duty of fair representation.

### A. Tim Richardson

■ The court does not feel that defendant Richardson's conduct even approached the state of being arbitrary, discriminatory, or in bad faith. The issue of telegrams arose on September 23, 1977 during a meet-

ing between Richardson; Tony August, WC's supervisor on the dock; and Jim Vasile, a member of WC's management. In the course of that meeting, Richardson protested that plaintiffs had been discharged improperly so that the terminations were invalid. (Ferrante Deposition at 26–27). He maintained that plaintiffs should have either been fired on the spot for gross insubordination or should have been sent a letter with a copy to the union. From the context, it is clear that Richardson was not attempting to sabotage plaintiffs' interests, but was instead trying to prevent their discharge.

Moreover, the telegrams sent to each of the plaintiffs indicated that a letter complying with the contract was to follow. Thus, Richardson's allegedly harmful statement had absolutely no impact on the outcome of plaintiffs' case. Accordingly, the court disagrees with plaintiffs that Mr. Richardson's conduct amounted to inadequate representation.[1]

### B. *Duane Beeson*

■ As noted, plaintiffs maintain in their complaint that the union, through its attorney, Duane Beeson, failed adequately to represent them at their arbitration hearing. More specifically, plaintiffs claim that:

(1) on the day the arbitration hearing was held, the attorneys were changed;

(2) the new representative, Mr. Beeson, had never spoken to plaintiffs and was unprepared to proceed, but did so anyway;

(3) Mr. Beeson refused to introduce testimony taken at an earlier arbitration hearing which would have impeached Ken Lopes, who plaintiffs alleged attacked them with a knife;

(4) Mr. Beeson failed to establish plaintiffs' record of union activity, and failed to show that plaintiffs had in fact filed, or caused to be filed, numerous grievances against WC, which were the actual cause of the firings;

(5) Mr. Beeson failed to show WC's inconsistent actions by proving that WC did not fire plaintiffs on the spot, which was a violation of policy;

(6) Mr. Beeson failed to show that plaintiffs were experienced union members who knew better than to attack a supervisor;

(7) Mr. Beeson failed to show that the knife allegedly used by Mr. Lopes could be "fanned" open by flicking the wrist and did not need to be opened manually with both hands.

(8) Mr. Beeson failed to determine which WC official made the decision to fire plaintiffs and upon what information the decision was made.

As will be seen, the court feels that each of these alleged deficiencies are without merit.

### 1. *Charges one and two*

As to charges one and two, plaintiffs admit in their depositions that they spoke to Mr. Beeson about the subject incident on September 27, 1977, approximately a week before the arbitration hearing, when he helped them file an unfair labor practice charge with the National Labor Relations Board. (Ferrante Deposition at 54–55; Balestreri Deposition at 82–86). Later that same day, plaintiffs met for approximately an hour or more with Kenneth Silbert, a member of Mr. Beeson's law firm. (Ferrante Deposition at 55–56; Mora Deposition at 27–28). Plaintiff Balestreri testified in

---

1. It should be noted that during the arbitration hearing, plaintiff Balestreri testified regarding the September 23, 1977 meeting and stated that:

Mr. Richardson done [sic] everything but plead to [Mr. Vasile] and I even got up and said, "Tim, don't even plead for me anymore with this man. It is just a waste of time. I don't even want you to do it for me. Don't be pleading for me." I as an individual, I was referring to don't be pleading for me.

Plaintiff Ferrante testified concerning the same meeting and said:

I thought [Mr. Vasile] wanted Tim to beg him a little more. And I have never seen Tim Richardson beg anybody. But to solve that issue that night or like Balestreri said he was begging and Vasile was eating it up.

*Arbitration Transcript* at 96, 119.

his deposition that they met with Silbert on two occasions. (Balestreri Deposition at 67–68). Plaintiffs also testified that they met with Mr. Beeson on the day before the arbitration hearing. (Mora Deposition at 32–33; Balestreri Deposition at 70; Ferrante Deposition at 58–59). During that time, plaintiffs explained their side of the case, and Mr. Beeson took notes. Apparently, Mr. Beeson had also received from Mr. Silbert the information the latter had obtained during the previous meeting(s). Thus, contrary to what plaintiffs assert in their complaint, they met with Mr. Beeson or a member of his firm on at least three occasions prior to the hearing.

Moreover, the facts surrounding the subject incident were not complex so it would not have required much time for an experienced attorney like Mr. Beeson to get ready for the hearing on October 4, 1977. During the hearing, he presented seven witnesses, including the three plaintiffs. It appears from the transcript that Mr. Beeson was informed and did a most competent job in conducting examinations. There is absolutely nothing in the record to indicate that he was inadequately prepared or unable to forcefully present his clients' views. In fact, even plaintiff Ferrante, at a hearing on January 24, 1978 before the California Unemployment Insurance Appeals Board, and in the presence of the other plaintiffs, said that, "[w]e [plaintiffs] thought he [Beeson] did a thorough job." Thus, in light of the above, the court cannot agree with plaintiffs that they were inadequately represented at the arbitration hearing.

### 2. Charge three

Plaintiffs have also put a great deal of emphasis on testimony given approximately eight years ago by Mr. Lopes in an arbitration hearing involving another WC employee, Dan Nava. Plaintiffs maintain that during that earlier hearing, Mr. Kovach, one of Mr. Beeson's partners, succeeded in getting Mr. Lopes to admit that he was giving false testimony. Plaintiffs therefore assert that if Mr. Beeson would have submitted that Nava arbitration hearing transcript into the October 4, 1977 arbitration hearing before Mr. Kagel, then Mr. Lopes' credibility would have been severely damaged. The court does not agree.

There is nothing in the Nava hearing transcript indicating that Mr. Lopes admitted lying on the stand. On the contrary, the arbitrator wrote in his decision rendered December 31, 1971:

> While the evidence is conflicting, on balance there seems little doubt but that the Grievant [Nava] is guilty of most of the acts of which he is charged. The supervisor's testimony as to normal work performance compared with that of the Grievant is convincing regarding the June 14 incident.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> The Employer's testimony is precise, and was presented in a convincing manner, as to the exact times involved . . . .

Opinion and Decision of William Eaton, Arbitrator, at 7–8.

The court must therefore disagree with plaintiffs that Mr. Beeson erred in failing to submit the testimony from the 1971 arbitration hearing. Plaintiffs' third charge is without merit.

### 3. Charge seven

Plaintiffs also contend that Mr. Beeson should have demonstrated to the arbitrator, Mr. Kagel, that a knife such as the one carried by WC's supervisor, Mr. Lopes, could be opened with a flick of the wrist. By doing so, Mr. Beeson could have convinced the arbitrator that Mr. Mora's testimony was more credible. During his testimony at the arbitration hearing, plaintiff Mora stated that Lopes unsnapped the case in which he carried his knife, pulled the knife out, opened the knife with both hands, and then slashed at him. Later, plaintiff Mora contradicted himself by saying that he did not see Lopes actually pull the knife out of the case, but only saw him come up with the knife. Plaintiffs maintain that if Mr. Beeson had shown that the knife could be opened with a flick of the wrist, Mora's failure to see it taken from the case would have been more understandable.

The court feels that the above point is irrelevant. The arbitrator, primarily because of the contradictions in Mora's testimony, concluded that the knife was never taken out of its case. Thus, whether the knife could be opened with one hand or two hands is an immaterial fact. Moreover, there is nothing in the record to indicate that the knife Lopes carried could actually be opened up with one hand. Tim Richardson testified in his deposition that he, along with one of the plaintiffs, attempted to snap open Lopes' knife during a recess at the arbitration hearing, but failed to do so. (Richardson Deposition at 71–72). The court therefore finds no merit in this charge.[2]

**4.** *Charges four, five, six, and eight*

The court, upon examining each of these charges, cannot agree with plaintiffs that these amount, singly or collectively, to proof of a breach of fair representation. The failure to raise these issues was at most negligence on the part of Mr. Beeson.[3] But as pointed out earlier, plaintiffs must show that defendant union presented an arbitrary or perfunctory defense.

Accordingly, defendant union' motion for summary judgment is granted.

## IV. BREACH OF THE COLLECTIVE BARGAINING AGREEMENT

As noted earlier, a direct action for wrongful discharge may be maintained by an individual employee after unsuccessful prosecution of the claim in grievance procedures only if it is found that the union has breached its duty of fair representation. *Elrod v. Teamsters*, 85 LRRM 2189 (9th Cir. 1973) (citing *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)).

Since the court has concluded that as a matter of law the union provided adequate representation for plaintiffs, the latters' action for breach of the collective bargaining agreement must also fail.

## V. ACTION AGAINST TIM RICHARDSON

 Section 301 only provides the basis for an action against a union as an entity, and not against individuals who happen to hold positions in that union. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Hall v. Pacific Maritime Ass'n*, 281 F.Supp. 54 (N.D.Cal. 1968).

Accordingly, an action cannot be maintained against defendant Richardson. He, too, is entitled to summary judgment.

---

**2.** It should be noted as to charges three and seven that Mr. Beeson's failure to raise these points was at most a matter of negligence. The representation was not in any way arbitrary or perfunctory.

**3.** *See Ernest v. Teamsters*, 95 LRRM 3298, 3299 (N.D.W.Va.1977) (and cases cited therein) (a grievant has no right to dictate what tactics are to be used, and any deficiencies in the choice of tactics do not rise to a breach of fair representation unless based on discrimination, bad faith, or arbitrariness).