[No. B034347. Second Dist., Div. Five. Sept. 28, 1989.]

VIRGINIA ARAGON, Plaintiff and Appellant, v.
PAPPY, KAPLON, VOGEL & PHILLIPS et al., Defendants and
Respondents.

452

**COUNSEL**

Rudolfo Ginez, Jr., for Plaintiff and Appellant.

Bottum, Rady & Feliton, John R. Feliton, Jr., Christopher R. Pflug and Kenneth C. Feldman for Defendants and Respondents.

## OPINION

**LUCAS, P. J.**—Appellant, a discharged employee, brought an action against her employer, her union, and a law firm and attorney retained by her union to represent its members in grievance and arbitration proceedings as provided by a collective bargaining agreement. The complaint included allegations of professional malpractice. Appellant appeals from a summary judgment and judgment entered thereon based on respondents' contention that the immunity from individual liability generally provided to union members, officials, and agents pursuant to section 301(b) of the Labor Management Relations Act (29 U.S.C. § 185(b)) is available to attorneys and law firms on retainer to unions in a cause of action for professional malpractice. We affirm the judgment given the specific facts of the case before us.

### BACKGROUND

Appellant was discharged after more than 14 years of employment by Ralphs Grocery Company (Employer).[1] A collective bargaining agreement between Employer and Local Union No. 572 (Union), of which appellant was a member, was in effect at the time of her discharge.[2] Appellant sought assistance from Union for reinstatement and backpay. Pursuant to the collective bargaining agreement, Union filed a grievance regarding the discharge.

Union had a retainer agreement, which included representation at arbitration hearings, with the law firm of Pappy, Kaplon, Vogel & Phillips (Pappy, Kaplon). Union decided the matter should be arbitrated and referred the case to attorney Ralph Phillips (Phillips) of Pappy, Kaplon. Phillips and Pappy, Kaplon are the defendants and respondents in the matter before us.

Union told appellant to contact Phillips to discuss her employment problems. Sometime after this discussion, Phillips appeared at the arbitration hearing, which was held on March 12, 1982. After an executive session attended by the arbitrator, a representative of Employer, and Phillips, the arbitrator announced a proposed settlement.[3] In response to questions by

---

[1] Appellant sued Ralphs Grocery Company in the case at bar as "Federated Department Stores, Inc., dba Ralphs Grocery Company."

[2] Union is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

[3] The arbitrator stated the proposed settlement as follows: "Number One: That Vicki Aragon will be reinstated at Ralphs Grocery Company effective Monday, March 15, 1982. [¶] Number Two: The period of time that she has been off the job, which is from approximately December 1, 1981 through March 14, 1982, will be represented as the following in her personnel file: [¶] One month of that period of time will be a disciplinary layoff without pay,

the arbitrator, appellant stated that she understood and accepted the proposal.

Pursuant to the settlement, appellant returned to work on March 15, 1982. Appellant, who had worked day shifts as a cheese packer before her discharge, was given the night shift as a sanitation/utility worker. Shortly after her return to work, appellant wanted to rescind the settlement and reconvene the arbitration hearing, but Union considered the matter closed. Appellant quit her job on April 2, 1982.

On March 24, 1983, appellant filed an action in superior court. Her first amended complaint filed August 2, 1983, names as defendants Employer, Union, Phillips, and Pappy, Kaplon, among others. Appellant asserted a number of causes of action under both federal and state law, including breach of duty of fair representation against Union and professional malpractice against Phillips and Pappy, Kaplon.

All of the named defendants successfully petitioned for removal of the action to the United States District Court, Central District of California, pursuant to 28 United States Code section 1441(b), on the grounds that appellant's claims arose out of an alleged violation of her collective bargaining agreement between Employer and Union which represented employees in an industry affecting commerce as defined in section 301 (29 U.S.C. § 185) of the Labor Management Relations Act. The district court dismissed all causes of action for failure to state a claim upon which relief can be granted (Fed. Rules Civ.Proc., rule 12(b)(6)) and appellant appealed.

In *Aragon* v. *Federated Dept. Stores, Inc.* (9th Cir. 1985) 750 F.2d 1447, certiorari denied 474 U.S. 902 [88 L.Ed.2d 229, 106 S.Ct. 229], the Ninth

---

and the balance of the time will be considered a personal leave of absence without pay. [¶] Number Three: It is understood that Vicki Aragon will receive no back pay or dollar compensation for the period of time that she has been off since December 1 up to her reinstatement, and there is no back pay made in conjunction with this settlement. [¶] Number Four: Mrs. Aragon will be reinstated to a bracket two position with bracket two seniority. It is my understanding, however, that the company will not regularly assign her to bracket two, but will, in fact, regularly assign her to bracket five work. [¶] It is my further understanding that the company has the right to utilize Mrs. Aragon based upon operational leads [*sic*] in this bracket where she has the ability or qualification to perform the job. [¶] Number Five: The company will make one health and welfare contribution to the Food Employers Teamsters Security Health and Welfare Trust Fund for the month of December, 1981. [¶] And Six: It is my understanding that Mrs. Aragon agrees to waive any rights she has under the collective bargaining agreement in conjunction with this settlement and, further, that she agrees not to file any claims through any governmental or state agencies or any court of law of [*sic*] equity, federal or state; further, that if she has any such claims pending at this time, she agrees to withdraw such claims in consideration of the terms of the settlement."

Circuit reversed the dismissal of the malpractice claim alleged against Phillips and Pappy, Kaplon on the basis that the district court had lacked jurisdiction because the claim "was not preempted by federal law, and because there exists no independent basis of federal jurisdiction" since the other causes of action had been properly dismissed as time barred under applicable federal law. (At pp. 1453-1454, 1458.) It remanded the cause to the district court for remand to the California state court "to determine whether [appellant] has alleged facts sufficient to withstand a motion to dismiss." (At p. 1458.)

After remand to the state court, a Ninth Circuit panel different from that which had authored *Aragon* decided *Peterson* v. *Kennedy* (9th Cir. 1985) 771 F.2d 1244, certiorari denied 475 U.S. 1122 [90 L.Ed.2d 187, 106 S.Ct. 1642]. *Peterson* discussed at length the issue of immunity for union counsel and specifically addressed *Aragon*. In state court, Phillips and Pappy, Kaplon moved for summary judgment based primarily on *Peterson*. The motion was granted, judgment was entered thereon, and this appeal followed.

## DISCUSSION

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) Phillips and Pappy, Kaplon (hereafter, respondents) successfully argued in the trial court that the uncontradicted evidence showed that they had acted solely pursuant to an obligation to provide representation for and on behalf of Union and that in such role they were immune from liability for the alleged professional malpractice. Appellant contends the trial court reached the wrong result and argues as follows: (1) *Aragon* decided that federal labor law did not preempt the legal malpractice cause of action and therefore immunity is not available to respondents; (2) the immunity available to union officials and members pursuant to section 301(b) of the Labor Management Relations Act (29 U.S.C. § 185(b)) should not be extended to respondents; and (3) an attorney-client relationship existed between appellant and respondents.

(1) *Preemption.*

■ Appellant contends that because *Aragon* held her action for attorney malpractice was not "preempted by federal law," *Aragon* should have prevented the application in the state court of the immunity theory of *Peterson* v. *Kennedy, supra,* 771 F.2d 1244, the case on which respondents primarily relied in their motion for summary judgment.

██ With regard to the National Labor Relations Act, as amended (29 U.S.C. § 141 et seq.), the doctrine of preemption may be invoked in two basic contexts: (1) In deciding jurisdiction; and (2) as a defense.

With respect to jurisdiction, an issue may arise whether the National Labor Relations Board (NLRB) has exclusive jurisdiction over a particular claim or whether jurisdiction rests with the courts. "A primary justification for the preemption doctrine [is] the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose . . . ." (*Vaca* v. *Sipes* (1967) 386 U.S. 171, 180-181 [17 L.Ed.2d 842, 852, 87 S.Ct. 903].) For example, it has been held that in the interest of uniformity, hiring hall practices come under the exclusive jurisdiction of the NLRB. (*Plumbers' Union* v. *Borden* (1963) 373 U.S. 690 [10 L.Ed.2d 638, 83 S.Ct. 1423].)

If the NLRB does not have exclusive jurisdiction, the next consideration is whether jurisdiction of the matter lies with either a federal court or a state court or concurrently with both. ██ If the intent of Congress was to preempt an entire field of law and provide a uniform federal law cause of action, there is "complete preemption." "The 'necessary jurisdictional consequence is that the cause of action is made federal, permitting removal [from state court to federal court].' " (*Williams* v. *Caterpillar Tractor Co.* (9th Cir. 1986) 786 F.2d 928, 932, affirmed *sub nom. Caterpillar Inc.* v. *Williams* (1987) 482 U.S. 386 [96 L.Ed.2d 318, 107 S.Ct. 2425].) ██ There is "complete preemption" for a cause of action for violation of a collective bargaining agreement, which "may be removed to federal court even if an otherwise adequate state cause of action may exist. [Citation.]" (*Ibid.*)

As a defense, the doctrine of preemption may be invoked where federal jurisdiction does not lie and a cause of action is properly before a state tribunal. (786 F.2d 928, 932.) Respondents so used the doctrine in the case at bar when they invoked the defense of immunity provided by section 301(b).

 In discussing preemption, *Aragon* referred to the test set forth in *Farmer* v. *Carpenters* (1977) 430 U.S. 290, 300-301 [51 L.Ed.2d 338, 350-351, 97 S.Ct. 1056],[4] and concluded as follows: "The state

---

[4] With respect to section 301 cases, the test set forth in *Farmer* v. *Carpenters, supra,* 430 U.S. 290, has been superseded by that in *Allis-Chalmers Corp.* v. *Lueck* (1984) 471 U.S. 202 [85 L.Ed.2d 206, 105 S.Ct. 1904]: Whether the state tort action "confers non-negotiable state law rights on employers or employees independent of any right established by contract, or, instead whether evaluation of the tort claim is inextricably intertwined with consideration of

malpractice claim . . . falls within the limitations of the *Farmer* holding. It poses no significant threat to the collective bargaining process; [union's counsel] is not even a party to the collective bargaining agreement. . . . The malpractice claim does not alter the economic relationship between employer and employee; it alters only the relationship between the former employee and a wholly separate entity, the union's counsel. The remedy is in tort, and it is based on the standard of care the attorney owes the client; it is not a contractual remedy under a collective bargaining agreement. It also furthers the state's interest in protecting the public from legal malpractice, an interest that transcends labor law." (750 F.2d at 1456-1457.)[5]

The *Aragon* discussion of preemption and the *Farmer* test logically relates to the question whether there is "complete preemption"—that is, whether the matter *must* be heard in federal court. However, *Aragon* does not address the merits of a claim of preemption as a defense. (See comment on *Aragon* in *Williams, supra,* 786 F.2d at pp. 933-935.) That is, *Aragon* did *not* discuss the issue in *Peterson* which provided the basis for respondents' motion for summary judgment: whether the immunity set forth under section 301(b) of the Labor Management Relations Act (29 U.S.C. § 185(b)) was available to respondents as a defense. (*Moreau* v. *San Diego Transit Corp.* (1989) 210 Cal.App.3d 614, 621 [258 Cal.Rptr. 647].) Opinions are not authority for propositions not considered therein. (*McDowell & Craig* v. *City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344].)

(2) *Immunity.*

Section 301(b) of the Labor Management Relations Act (hereafter, 301 (b)) provides: "Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. *Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.*" (Italics supplied.) The italicized language is the basis of respondents' claim of immunity.

the terms of the labor contract." (At p. 213.) (Cf. *Jackson* v. *Southern California Gas Co.* (9th Cir. 1989) 881 F.2d 638; *Hyles* v. *Mensing* (9th Cir. 1988) 849 F.2d 1213, 1216-1217; *Harper* v. *San Diego Transit Corp.* (9th Cir. 1985) 764 F.2d 663, 667-668.)

[5]*Aragon* also decided that the matter belonged in state court on the basis of a loss of pendent jurisdiction under its affirmance of the district court's decision that the federal claims against Employer and Union were time barred pursuant to the six-month statute of limitations of section 10(b) of the National Labor Relations Act (29 U.S.C. § 160(b)). (At pp. 1447, 1450-1455, 1457-1458.)

The genesis of 301(b) lies in the *Danbury Hatters* cases (*Loewe* v. *Lawlor* (1908) 208 U.S. 274 [52 L.Ed. 488, 28 S.Ct. 301]; *Lawlor* v. *Loewe* (1915) 235 U.S. 522 [59 L.Ed. 341, 35 S.Ct. 170]; *Loewe* v. *Savings Bank of Danbury* (2d Cir. 1916) 236 Fed. 444). The United States Supreme Court has explained the cases and the congressional response to them as follows: "[A]n antitrust treble damage action was brought against a large number of union members, including union officers and agents, to recover from them the employer's losses in a nationwide, union-directed boycott of his hats. The union was not named as a party, nor was judgment entered against it. A large money judgment was entered, instead, against the individual defendants for participating in the plan 'emanating from headquarters' (235 U.S. at p. 534 [59 L.Ed.2d at pp. 235-236]), by knowingly authorizing and delegating authority to the union officers to do the acts involved. In the debates, Senator Ball, one of the [Labor Management Relations] Act's sponsors, declared that [section] 301, 'by providing that the union may sue and be sued as a legal entity, for a violation of contract, and that liability for damages will lie against union assets only, will prevent a repetition of the Danbury Hatters' case, in which many members lost their homes' [citations]." (*Atkinson* v. *Sinclair Refining Co.* (1962) 370 U.S. 238, 248 [8 L.Ed.2d 462, 470, 82 S.Ct. 1318].) The result in *Peterson* v. *Kennedy, supra,* 771 F.2d 1244, on which respondents relied in their successful motion for summary judgment, is predicated on this doctrine of immunity.[6]

*Peterson,* like *Aragon,* involved a plaintiff who became dissatisfied with the handling of a grievance and filed an action which alleged that the union had breached its duty of fair representation and, based on the same alleged misconduct, that the attorneys were liable for professional malpractice. A factual difference between *Aragon* and *Peterson* is that the attorneys in the former were on retainer with Union while the attorneys in *Peterson* were in-house counsel.

After a jury trial in *Peterson,* the district court issued a directed verdict in favor of an attorney defendant, ruling that the legal malpractice claim was subsumed in and precluded by the plaintiff's breach of duty claim against the union. The jury returned a verdict against the union, finding that it had breached its duty of fair representation in handling the grievance. The trial judge, however, granted the union's motion for a judgment notwithstanding the verdict, based in part on its conclusion that the evidence demonstrated that the union's conduct amounted to no more than negligence, and that merely negligent conduct is legally insufficient to sustain a claim for breach of the duty of fair representation. The Ninth Circuit affirmed this ruling,

---

[6]To date, our research has disclosed two opinions which have followed *Peterson* on this issue: *Montplaisir* v. *Leighton* (1st Cir. 1989) 875 F.2d 1 and *Bachner* v. *Air Lines Pilots Ass'n.* (1987) 113 F.R.D. 644.

noting that "[a] union breaches its duty of fair representation only when its conduct toward a member of the collective bargaining unit is 'arbitrary, discriminatory, or in bad faith.' [Citation.]" (*Peterson* v. *Kennedy, supra,* 771 F.2d at 1252-1256.) It then discussed the directed verdict in favor of the union's attorney, stating: "We believe that sound policy reasons as well as established precedent compel the conclusion that attorneys who perform services for and on behalf of a union may not be held liable in malpractice to individual grievants *where the services the attorneys perform constitute a part of the collective bargaining process.*" (At p. 1256, italics added.)

The opinion cites a number of cases in support of the above pronouncement: *Atkinson* v. *Sinclair Refining Co., supra,* 370 U.S. 238 [employer barred from suing certain union members individually in their capacity as agents for the union for alleged involvement in a strike in violation of the collective bargaining agreement]; *Complete Auto Transit, Inc.* v. *Reis* (1981) 451 U.S. 401 [68 L.Ed.2d 248, 101 S.Ct. 1836] [union members participating in "wildcat" strike cannot be held individually liable for violating no strike clause of collective bargaining agreement whether or not the union participated in or authorized the illegality]; *Hardline Elec.* v. *Intern. Broth. of Elec. Workers* (9th Cir. 1982) 680 F.2d 622 [following *Complete Auto Transit, Inc.* by stipulation of the parties (at p. 624, fn. 1)]; *Williams* v. *Pacific Maritime Association* (9th Cir. 1970) 421 F.2d 1287—refers to background facts as set forth in *Williams* v. *Pacific Maritime Association* (9th Cir. 1967) 384 F.2d 935—union members not permitted to sue individual union officers and executive officials of defendant union which was alleged to have engaged in civil conspiracy with employer to bring about the wrongful deregistration and discharge of plaintiffs through a newly negotiated collective bargaining agreement; *United Steelwkrs. of America* v. *Lorain, etc.* (6th Cir. 1980) 616 F.2d 919 [employer cannot maintain action against union officers and staff representative in alleged illegal strike involving arbitrable issues]; *Universal Communications Corporation* v. *Burns* (5th Cir. 1971) 449 F.2d 691 [against background of continuing conflict regarding efforts to unionize television station, plaintiff station cannot sue union official for attempting to induce political candidates to boycott station by falsely telling candidates that other stations were unionized]; *Balestreri* v. *Western Carloading* (N.D.Cal. 1980) 530 F.Supp. 825 [ex-employee brings action against union and its business agent for failure to adequately represent plaintiff regarding his discharge for fighting; district court determines legal representation by attorney (not sued) and by business agent was adequate and holds in addition that agent is immune under section 301]; *Suwanchai* v. *International Broth. of Elec. Workers* (D.N.H. 1981) 528 F.Supp. 851 [union official immune under section 301 in action against union and official for breach of duty of fair representation in failing to timely file or properly present grievance]; *Henry* v. *Radio Station KSAN*

(N.D.Cal. 1974) 374 F.Supp. 260 [plaintiffs acknowledge that they cannot sue union business agent individually for inadequate representation in dispute with employer regarding alleged race discrimination].

*Peterson* interpreted the case law as extending immunity to any union agent who performs a function in the "collective bargaining process" and rejected plaintiff's argument that an exception to the immunity rule "should be fashioned for union employees who happen to be attorneys" (771 F.2d at pp. 1257-1258). While the cases cited in *Peterson* did not consider the precise issue of whether the immunity provided under 301(b) is available to a union agent who is an attorney involved in a grievance procedure pursuant to a collective bargaining agreement, they do evince a concept that union agents per se are immune when involved in activities connected with the agreement. In *Balestreri, Suwanchai,* and *Henry, supra,* immunity was available to nonattorney union agents who represented union members in the grievance process. In the instant case, appellant's grievance and arbitration proceedings were brought pursuant to the terms of the collective bargaining agreement and brought because she alleged that Employer had breached the agreement.

As further reasons for its decision, *Peterson* cited certain inconsistencies which would result from a disparate treatment of union attorneys: (1) "Negligence is the essence of a malpractice action" but "is insufficient to support a breach of the duty of fair representation" in an action against a union; (2) representation in a grievance procedure can be assumed by a nonattorney union official who would be immune from suit under 301(b) while a union attorney in the same role would not; (3) different statutes of limitations (six months under federal law and three years under California law) "would destroy the rationality and symmetry the Supreme Court has finally brought to the law with respect to the time for the filing of suits in cases involving claims by union members that their grievances were mishandled." (*Peterson* v. *Kennedy, supra,* 771 F.2d at 1258-1259.) In addition, *Peterson* characterized the attorney-client relationship as being one in which the union, rather than the union member, was the principal client and believed this to be an important consideration.[7]

---

[7] The *Peterson* court stated: "We do not believe that an attorney who is handling a labor grievance on behalf of a union as part of the collective bargaining process has entered into an 'attorney-client' relationship in the ordinary sense with the particular union member who is asserting the underlying grievance. Although the attorney may well have certain ethical obligations to the grievant, his principal client is the union; it is the union that has retained him, is paying for his services, and is frequently the party to the arbitration proceedings. [¶] The legal theory we describe tracks the practical realities of labor-management relations in the United States today. The union member looks to his union to save his job, gives it credit when a dispute is resolved in his favor, and holds it responsible when his discharge is upheld or he loses other important rights. He views the union attorney as an arm of his union rather

Finally, *Peterson* considered the argument that *Aragon, supra*, 750 F.2d 1447, and *Weitzel* v. *Oil Chemical & Atomic Wkrs. Intern. U.* (9th Cir. 1982) 667 F.2d 785, supported the contention of the plaintiff in *Peterson* that an exception to the immunity rule should be carved out for attorneys.[8] *Peterson* summed up its analysis of these two cases as follows: "Neither in *Weitzel* nor in *Aragon* did we decide what facts or circumstances a union member would be required to show in order to establish the existence of a private attorney-client relationship between himself and a law firm that is retained generally to represent his union. Certainly, at the least, it would be necessary for him to prove that in his particular case the law firm was not acting pursuant to its obligation to provide representation for or on behalf of the union and that it had specifically agreed, instead, to provide direct representation to him as an individual client. [¶] We have little difficulty in reconciling our holdings in *Weitzel* and in *Aragon* with the conclusion that we reach in this case. Unlike the earlier cases, it is clear here that the attorneys involved were acting on behalf of the union in carrying out the union's obligation to represent its members in the collective bargaining process. We thus affirm the district court's judgment that a malpractice action against [defendant attorney] will not lie." (771 F.2d at 1261.) With this discussion, *Peterson* extended 301(b) immunity to retained counsel.

█ *Peterson* does allow recovery by a union member against an attorney employed by a union in certain circumstances: (1) "[M]alpractice suits by union members who have themselves retained counsel to process grievances on their behalf, even though the individual or firm also serves as the union's regular outside counsel and is employed at the union's suggestion"; (2) "[W]here the legal services provided are wholly unrelated to the collective bargaining process; e.g., drafting a will, handling a divorce or litigating a personal injury suit" whether or not the attorneys are employed by the union. (771 F.2d p. 1259.) As discussed in the following section of this opinion, the facts of this case do not bring appellant within either category.

Appellant in the instant case argues that a distinction between the in-house counsel of *Peterson* and retained counsel should be maintained because the rationale behind the immunity doctrine is inapplicable and not promoted by such an extension and because the state has a compelling interest in protecting its citizens from the harm caused by negligent attorneys.

---

than as an individual he has chosen as his lawyer. In fact, it is not uncommon for the union member to be completely unaware, at least prior to the arbitration hearing, of who on the union's staff is actually handling his grievance." (At pp. 1258-1259.)

[8] *Weitzel* held that a summary judgment had been inappropriate in an action for legal malpractice because issues of fact remained as to the alleged breach of an attorney-client relationship between the plaintiff, a discharged union member, and an attorney in a law firm retained by the union to represent its interests in administrative matters.

With regard to the first consideration, we are persuaded by the functional analysis of the role of a union attorney presented by *Peterson*: "Union officers, employees and agents are not subject to individual liability for acts performed on behalf of the union in the collective bargaining process. . . . A different result is not warranted or permissible merely because a union chooses to employ an attorney rather than a business agent to perform collective bargaining functions." (771 F.2d p. 1259.) We find no basis on which to distinguish between in-house and retained counsel.

As to the interest of the state in regulating lawyers, we find nothing in *Peterson* which would prevent a dissatisfied union member from complaining to the State Bar Association regarding negligent acts. In addition, *Peterson* has described discrete situations where a true attorney-client relationship exists by reason of the party hiring the attorney specifically for representation in the grievance process or for legal services wholly unrelated to the collective bargaining process, whether or not the attorney is employed by the union. In such situations, the immunity defense would be unavailable in an action by the union member for professional malpractice. In egregious situations related to the collective bargaining process, the union member may bring an action against the union, which may in turn sue its counsel.

In summation, we are persuaded that federal case law and policy considerations provide immunity under 301(b) to retained counsel functioning as union agents in the collective bargaining process.

(3) *Attorney-client Relationship*

Appellant contends that an attorney-client relationship existed between her and respondents either directly or under a third party beneficiary analysis.

In the instant case, the collective bargaining agreement provides that designated representatives of Employer and Union shall participate in various proceedings in the event of a discharge or suspension. Declarations and the hearing transcript offered by respondents in support of their motion for summary judgment show that they were retained to act as designated representatives of Union in grievance and arbitration proceedings and that Phillips so appeared in appellant's arbitration. Appellant's declaration and deposition testimony indicate that she understood that the union initiated and controlled the grievance procedure, that it was responsible for her representation, and that Phillips was the Union's attorney. Appellant offered no evidence of an agreement between her and respondents to specifically repre-

sent her rather than Union in the proceedings.[9] We conclude the evidence shows that respondents were functioning as union agents in the collective bargaining process and no triable issue of material fact exists regarding whether there was a direct attorney-client relationship between appellant and the respondents.

Appellant argues that there exists an attorney-client relationship analogous to an insured being represented by an attorney paid by the insurer and she should be allowed to maintain a cause of action on this basis. We are not persuaded that the analogy is a valid one. The duty of an attorney representing a union is to uphold and enforce the collective bargaining agreement existing between labor and management; this interest may sometimes diverge from that of the individual union member. Because the collective interests of a union are paramount, those of the individual employee-union member must sometimes be subsumed. (See, e.g., *Ford Motor Co.* v. *Huffman* (1953) 345 U.S. 330, 338 [97 L.Ed. 1048, 1057-1058, 73 S.Ct. 681].) The individual is thus only an indirect beneficiary of the negotiated, enforced agreement. In contrast, the insurance situation involves a contract between the insurance company and the insured whereby a direct attorney-client relationship is established between the attorney and the insured. Thus, the analogy proposed by appellant fails to withstand scrutiny.

In conclusion, no triable issue of material fact has been raised, and law supports the summary judgment granted by the trial court.

### DISPOSITION

The judgment is affirmed.

Ashby, J., and Boren, J., concurred.

---

[9]The only contradiction in the evidence which we have found in our examination of the record is that plaintiff declared that Phillips never informed her that she could retain a private lawyer to represent her while Phillips declared that it was his standard practice whenever the issue was raised to encourage grievants to bring their own counsel to arbitration proceedings and that he so counselled plaintiff, whose son is an attorney. This discrepancy in the evidence is immaterial and therefore an insufficient basis on which to reverse the summary judgment.