

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-19-2004

# Carino v. Stefan

Precedential or Non-Precedential: Precedential

Docket No. 03-3679

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Carino v. Stefan" (2004). *2004 Decisions.* Paper 435.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/435

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 03-3679

GISELA CARINO,
Appellant

v.

MARC STEFAN, ESQ;
BUTSAVAGE & ASSOCIATES, LLC.

Appeal from the United States
District Court for the
District of New Jersey
(D.C. Civil No. 03-cv-01894)
District Judge:
Honorable Joseph H. Rodriguez

Submitted Under
Third Circuit LAR 34.1(a)
May 26, 2004

Before:  SCIRICA, Chief Judge,
RENDELL and
ALARCÓN*, Circuit Judges.

(Filed  July 19, 2004)

* Honorable Arthur L. Alarcón, Senior
Judge, United States Court of Appeals for
the Ninth Circuit, sitting by designation.

Winston C. Extavour
203 Kings Highway East
Haddonfield, NJ  08033
    *Counsel for Appellant*

James Katz
Jennings Sigmond
1040 North Kings Highway, Suite 300
Cherry Hill, NJ  08034
    *Counsel for Appellees*

OPINION OF THE COURT

RENDELL, Circuit Judge.

Gisela Carino brought suit against attorney Marc Stefan and Stefan's employer, Bustavage & Associates, for legal malpractice in representing her in connection with a labor grievance proceeding against her employer. The District Court granted a motion to dismiss on the basis that the attorneys were immune from liability under 29 U.S.C. § 185(b), Section 301(b) of the Labor Management Relations Act ("LMRA"). We agree with the District Court and with those courts of appeals who have spoken on this issue, and will affirm.

I.

Carino, a New Jersey resident, was employed as an insurance agent with Prudential Insurance Company of America from 1989 to 1998. During this time period, she was a member of the United

Food and Commercial Workers International Union, which had entered into a collective bargaining agreement with Prudential.

Prudential terminated Carino's employment in October 1998, because it believed that she had engaged in professional misconduct by selling insurance policies to individuals in poor health and naming disinterested parties as the beneficiaries of the policies, and the company referred the charges against Carino to the Federal Bureau of Investigation ("FBI").[1]

Following the procedures established by the collective bargaining agreement, the Union filed a grievance on Carino's behalf, contesting her termination. Dissatisfied with the review of the grievance, the Union exercised its right to take the matter to arbitration.[2] The Union retained Butsavage & Associates ("Butsavage"), a Washington, D.C. law firm, to represent Carino at the arbitration hearing, which was to be held July 27-29, 2001, at the Sheraton Convention Center in Atlantic City, New Jersey. The firm appointed Marc Stefan, Esquire, to appear on her behalf.

Carino alleges that the following events occurred two days prior to her hearing. Stefan telephoned her and asked her to meet him at the Radisson Hotel in Mt. Laurel, New Jersey. At this meeting, Stefan advised her that the venue for the arbitration meeting had been changed to the Radisson Hotel. Furthermore, he indicated that Prudential and FBI investigators were at the hotel interviewing witnesses who would testify against her regarding her alleged misconduct, that they were prepared to take her to jail, and that she would need $100,000.00 to get out of jail.

Stefan then asked what Carino hoped to get out of the arbitration hearing. Carino replied that she wanted her employment record cleared of Prudential's false charges; the FBI investigation closed; a promise that Prudential would not sue her for attorney's fees; and her pension reinstated. Stefan claimed "that would be no problem and that he could work that out with Prudential." Carino agreed she would withdraw the grievance in return for Prudential's acceptance of her conditions.

Stefan then suggested they go downstairs to the bar and wait for the arbitrating judge. After an hour of waiting, he told Carino that they could leave and "call it a mutual agreement." He presented her with various forms, including a two-page document entitled

---

[1] According to Carino, the FBI investigation disclosed no evidence of wrongdoing on her part.

[2] Article 28 of the CBA provides that the Union may refer any grievance regarding the termination of a Prudential Representative to arbitration if the Union is dissatisfied with the outcome of the grievance procedure. Furthermore, it indicates that the Union is the only entity with the power to refer a matter to arbitration.

2

"Grievance Release," and asked her to sign them. He did not explain what the forms were or why she had to sign them. After she signed them, Stefan said he would meet with Prudential and obtain its agreement to what she wanted without any problem.

Thereafter, Carino realized that the documents she had signed made no reference to Prudential's concessions in return for her withdrawal and release. She contacted Stefan and his firm to complain, but heard no reply. In fact, she never heard from them again.

Carino argues that Stefan deceived her into settling her grievance in return for various promises which were never kept. She claims that, as a result of Stefan's alleged misconduct, she lost her opportunity to arbitrate her claims, her employment record remains blemished and her pension was never restored.

Carino filed a four count complaint in the Superior Court of New Jersey against Stefan and Butsavage alleging: (1) legal malpractice against Stefan; (2) intentional misrepresentation against Stefan; (3) breach of attorney's fiduciary duty against Stefan; and (4) liability under the doctrine of *respondeat superior* against Butsavage. Defendants removed the action to federal court based on diversity jurisdiction and, alternatively, based on federal jurisdiction under § 301 of the LMRA. The defendants then moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The District Court granted this motion, and

Carino filed a timely Notice of Appeal.

## II.

Our review of a district court's dismissal of a complaint under Rule 12(b)(6) for failure to state a claim is plenary, and we apply the same standard as the district court. Oatway v. Am. Int'l Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003). In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff. Id. We may grant such a motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## III.

This appeal presents a question of first impression for our Court, namely, whether an attorney hired by a union to perform services on behalf of a union member in connection with an arbitration hearing conducted pursuant to a collective bargaining agreement is immune from suit for malpractice by that member. We conclude that the LMRA bars such a suit.

Section 301(b) of the LMRA provides, in part, that "[a]ny money judgment against a labor organization in a District Court of the United States shall be enforceable only against the organization

as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b). Viewed narrowly, this language could be said to only exempt union members from personal liability for judgments against the union. However, the Supreme Court has given the statute a more expansive reading, stating that § 301(b) "evidences 'a congressional intention that the union as an entity, like a corporation, should in the absence of an agreement be the sole recovery for injury inflicted by it.'" Atkinson v. Sinclair Refining Co., 370 U.S. 238, 249 (1962) (quoting Lewis v. Benedict Coal Corp., 361 U.S. 459, 470 (1960)). Confronted by an action against a union and several of its officers in their individual capacities, the Court in Atkinson dismissed the count against the officers, stating that § 301 "cannot be evaded or truncated by the simple device of suing union agents or members, whether in contract or tort, or both, in a separate count or in a separate action for damages for violation of a collective bargaining contract for which damages the union itself is liable." Id. As a result, the law is clear that individual union officers are not personally liable to third parties for actions taken on behalf of the union in the collective bargaining process.

The Supreme Court thereafter extended the Atkinson rule in Complete Auto Transit, Inc. v. Reis, 451 U.S. 401 (1981), holding that a damage claim may not be maintained against an individual union officer even if the individual's conduct was unauthorized by the union

and was in violation of an existing bargaining agreement. Id. at 402. The Court noted that "the legislative history of § 301 clearly reveals Congress' intent to shield individual employees from liability for damages arising from their breach of . . . a collective bargaining agreement, whether or not the union participated in or authorized the illegality." Id. at 407.

Our court has recognized that Atkinson provides individual union members and officers immunity from suit for union wrongs . See, e.g., Wilkes-Barre Pub. Co. v. Newspaper Guild of Wilkes-Barre, Local 120, 647 F.2d 372, 377 (3d Cir. 1981); Republic Steel Corp. v. United Mine Workers of America, 570 F.2d 467, 478 (3d Cir. 1978). And, "with monotonous regularity, [other courts of appeals have] cited Atkinson to foreclose state-law claims, however inventively cloaked, against individuals acting as union representatives within the ambit of the collective bargaining process." Montplaisir v. Leighton, 875 F.2d 1, 4 (1st Cir. 1989); see also Morris v. Local 819, Int'l Bhd. of Teamsters, 169 F.3d 782, 784 (2d Cir. 1999); Evangelista v. Inlandboatmen's Union of the Pacific, 777 F.2d 1390, 1400 (9th Cir. 1985); Ramsey v. Signal Deliver Service, Inc., 631 F.2d 1210, 1212 (5th Cir. 1985).

The only courts of appeals to have considered the specific question presented here, where attorneys acted on behalf of the union, have uniformly concluded that Atkinson prohibits claims made by a union member against attorneys employed by or retained by the union to represent the

4

member in a labor dispute. See Waterman v. Transport Workers' Union Local 100, 176 F.3d 150 (2d Cir. 1999); ("[U]nder Atkinson, a union's attorneys may not be sued by an individual union member for actions taken pursuant to a collective bargaining agreement."); Arnold v. Air Midwest, Inc., 100 F.3d 857, 862 (10th Cir. 1996) ("[A]n attorney who performs services for and on behalf of a union may not be held liable in malpractice to individual grievants where the services performed constitute a part of the collective bargaining process."); Breda v. Scott, 1 F.3d 908, 909 (9th Cir. 1993) (holding that employees cannot sue inside or outside counsel for services rendered under a collective bargaining agreement); Montplaisir, 875 F.2d at 7 ("[F]or purposes of the Atkinson principle, [attorneys] must be treated the same as other union agents."); Peterson v. Kennedy, 771 F.2d 1244, 1258 (9th Cir. 1985), cert. denied, 475 U.S. 1122 (1986) ("Where, as here, the attorney performs a function in the collective bargaining process that would otherwise be assumed by the union's business agents or representatives, the rationale behind the Atkinson rule is squarely applicable.").

In Peterson, the first case to consider the question, a professional football player brought a malpractice suit against two attorneys provided by the player's union, claiming that they had furnished him with inaccurate advice upon which he had detrimentally relied in pursuing his grievance against his former employer. The Ninth Circuit Court of Appeals rejected the athlete's contention that an exception to the Atkinson rule should be fashioned for attorneys employed by or retained by the union. Peterson, 771 F.2d at 1257. The court noted that a union may choose to have its members' labor grievances handled by a union representative with no legal training, or by an attorney. Id. at 1258. If the union chooses to make use of an attorney, that attorney has not "entered into an 'attorney-client' relationship in the ordinary sense with the particular union member who is asserting the underlying grievance," but merely "assume[s] a function that often is performed by a union's business agents or representatives." Id. Although "[t]hat union member is surely justified in expecting the attorney to perform in a competent and professional manner . . . when the union is providing the services, it is the union, rather than the individual business agent or attorney, that represents and is ultimately responsible to the member." Id. Based on this "functional assessment of the attorney's role as a union representative within the collective bargaining process," the court concluded that Atkinson protected union attorneys from individual liability for acts performed on behalf of the union. Id. at 1259.

In addition to relying on the rule promulgated by the Supreme Court in Atkinson, the courts have identified several policy considerations weighing against the imposition of malpractice liability on union attorneys representing union members in labor grievances under a collective bargaining agreement. First,

5

while a plaintiff with a breach of the duty of fair representation claim against a union must prove that the union's conduct was arbitrary, discriminatory, or in bad faith, a plaintiff with a malpractice claim against an attorney must only prove that the attorney's conduct was negligent. As a result, it would be "anomalous" if the union attorney could be liable if merely negligent, while the union would be liable only if a higher standard were met, namely, arbitrariness or bad faith. See, e.g. Arnold, 100 F.3d at 862. Second, state statutes of limitations for malpractice are generally longer than the time limit for the filing of suits by union members claiming that their employer or their union mishandled their labor grievances. "If union attorneys were subject to malpractice liability in such cases, litigants would be able to proceed against the attorney long after the expiration of the statutory period for suits against both the union and the employer." Peterson, 771 F.2d at 1259. Finally, were union members permitted to sue union attorneys, the attorneys could be held liable for damages "flow[ing] from the union's political or tactical choices," which "could, in turn, severely hamper unions in enlisting quality representation." Montplaisir, 875 F.2d at 7.

We note that Carino has advanced several arguments in an effort to avoid the Atkinson rule, but we find them unconvincing. First, she contends that the LMRA does not completely preempt her state law claim,[3] and that, as a result, § 301(b) cannot be a basis for barring her claim. But the question of whether the preemptive power of § 301 of the LMRA is so complete as to transform her state law claim into a federal claim is distinct from the question of whether § 301(b) applies so as to bar her claim. Any court considering her suit against the union attorneys, whether it be a federal court with federal question jurisdiction, a federal court sitting in diversity, or a state court, would be compelled, as a matter of substantive law, to conclude that § 301(b) bars her claim under Atkinson. In Aragon v. Papy, Kaplon, Vogel and Phillips, 262 Cal. Rptr. 646 (Cal. Ct. App. 1989), after the Ninth Circuit had held that complete preemption did not apply to plaintiff's malpractice claim against attorneys provided by her union and remanded the case to state court, see Aragon v. Federated Dept. Stores, 750 F.2d 1447 (9th Cir.), cert. denied, 474 U.S. 902 (1985), the California Court of Appeal concluded "federal case law and policy considerations provide immunity under §

---

[3]The doctrine of complete preemption, an "independent corollary" to the well-pleaded complaint rule, applies where a federal law with "extraordinary" preemptive force essentially transforms a claim under state law into a claim under federal law for jurisdictional purposes. See Caterpillar, Inc v. Williams, 482 U.S. 386, 393 (1987). It is to be distinguished from the use of preemption as a defense, which applies federal law to bar state law claims.

6

301(b) to retained counsel functioning as union agents in the collective bargaining process." Aragon, 262 Cal. Rptr. at 654. In reaching its conclusion, the court reiterated that the Ninth Circuit's decision regarding complete preemption had no bearing on "whether the immunity set forth in Section 301(b) . . . was available to the [attorneys] as a defense." Id. at 650. Again, the issue is not one of preemption, but, rather, one of applicable substantive law.

Second, Carino maintains that even if § 301(b) applies, the immunity it provides to union attorneys does not apply because Stefan performed no services within the collective bargaining process. Carino is correct that the protection of § 301(b) only applies where a union agent's liability grows out of activities performed in relation to a collective bargaining agreement. Wilkes-Barre, 647 F.2d at 377. However, her assertion that Stefan provided no services because he convinced her to withdraw her grievance rather than arbitrate it is clearly incorrect. Stefan's actions, tortious or otherwise, grew out of the retention of his law firm by the Union to represent Carino during the arbitration of the grievance the Union had filed on her behalf under the collective bargaining agreement. While he may have deceived Carino into withdrawing her grievance, advising her to withdraw was an activity performed in relation to the collective bargaining agreement. The fact that he did not take the matter to arbitration "is insufficient to distinguish it from the activity by union attorneys which has consistently been found to be immune." Arnold, 100 F.3d at 863; see Peterson, 771 F.2d at 1251, 1261 (applying Atkinson immunity to pre-arbitration counseling).

Lastly, Carino notes that under New Jersey law "a lawyer's duty may run to third parties who foreseeably rely on the lawyer's opinion or other legal services." Petrillo v. Bachenburg, 655 A.2d 1354, 1359-60 (1995). As a result, she argues that while Stefan was retained by the Union, he still owed a duty of care to her. While this may indeed be true, this does not alter the fact that he was acting on behalf of the Union. The fact that he may have also have owed a duty to her does not remove the Atkinson bar.

IV.

Accordingly, guided by Atkinson and Reis and the logic of the opinions of our sister courts of appeals, we join these courts in holding that § 301 of the LMRA immunizes attorneys employed by or hired by unions to perform services related to a collective bargaining agreement from suit for malpractice. Thus, for all of the reasons above, we will affirm.

7