

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-5-2005

# Neuburger v. Thompson

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1690

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Neuburger v. Thompson" (2005). *2005 Decisions*. Paper 1581.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1581

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 04-1690

———————————

EDWARD C. NEUBURGER, individually
and as the Executor of the Estate
of KATHLEEN C. NEUBURGER, Deceased

v.

ROBERT THOMPSON; WILLIAM SIBBALD; JAMES
BARNES; MARK TEMEL, Individually and as
Pennsylvania State Police Troopers; ERBY
CONLEY, Individually and as Commander of
Troop E Pennsylvania State Police; MICHAEL
HAMPLE, Individually and as Captain of
Troop E Pennsylvania State Police

Edward C. Neuburger,

Appellant

———————————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 03-cv-00237E)
District Judge: Honorable Sean J. McLaughlin

———————————

Submitted Under Third Circuit LAR 34.1(a)
December 14, 2004

Before: AMBRO, VAN ANTWERPEN and STAPLETON, Circuit Judges

(Opinion filed January 5, 2005)

---

OPINION

---

AMBRO, <u>Circuit Judge</u>

Plaintiff Edward C. Neuburger appeals the decision of the District Court dismissing his federal claims and as a consequence declining to exercise supplemental jurisdiction over his state law claims. For the reasons that follow, we affirm.

## I. Factual and Procedural History

This action arises out of the fatal shooting of Kathleen C. Neuburger in August 2001. Mr. Neuburger, individually and as executor of his wife's estate, filed this action against Pennsylvania State Police Troopers Robert Thompson, William Sibbald, James Barnes and Mark Temel. He sues as well Erby Conley, Commander of Troop E of the Pennsylvania State Police, and Michael Hample, Captain of Troop E of the Pennsylvania State Police. Plaintiff's complaint, filed in the United States District Court for the Western District of Pennsylvania in July 2003, includes claims under both 42 U.S.C. § 1983 and Pennsylvania law.

As alleged in the complaint, at about 10:15 p.m. on August 18, 2001, Ms. Neuburger was sitting on a jetty, which extended approximately thirty feet from the shoreline into the Walnut Creek Access Area of Lake Erie. She appeared distraught. After Ms. Neuburger fired a shot from a handgun into the lake, witnesses called 911.

At about 10:37 p.m., when Troopers Thompson, Sibbald, Barnes and Temel

2

arrived on the scene, Ms. Neuburger remained at the end of the jetty facing the water. Trooper Barnes was designated to speak with Ms. Neuburger. Trooper Thompson, armed with a shotgun, and Trooper Sibbald, armed with a semi-automatic handgun, provided cover. Trooper Temel provided cover and light from two flashlights.

Approaching from directly behind the jetty, Trooper Barnes spoke with Ms. Neuburger, who was highly emotional and crying unintelligibly. Among other things, he told her to put down her gun. As stated in the complaint, Ms. Neuburger responded by telling the troopers to "get away from her and [to] not make her do this." The troopers continued approaching, and Trooper Barnes continued telling Ms. Neuburger to put down her weapon. Still facing the lake, and with her feet in the water, Ms. Neuburger raised her arm and pointed the gun out across the water. Ms. Neuburger began to pivot toward Trooper Barnes with her arm holding the gun extended. She stated, "You're making me do this," and pointed her handgun toward Trooper Barnes. Trooper Thompson then shot Ms. Neuburger in the head and neck, knocking her into the water and causing her death.

Mr. Neuburger asserts that prior to the troopers' approach his wife did not pose an imminent threat of death or serious bodily injury to the troopers or anyone else in the area. Thus the troopers should have attempted to "wait out" the incident or taken alternative steps such as having a trained negotiator communicate with Ms. Neuburger. In any event, the troopers should have taken measures other than approaching Ms. Neuburger, which her husband asserts created the circumstances in which the deadly force was used.

Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, the District Court dismissed Mr. Neuburger's federal claims and declined to exercise supplemental jurisdiction over his state law claims. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. Discussion

### A. Standard of Review

We exercise plenary review of a dismissal order for failure to state a claim. *Angstadt v. Midd-West Sch. Dist.,* 377 F.3d 338, 342 (3d Cir. 2004). In considering a Rule 12(b)(6) determination, we apply the same standard as the District Court, in that we accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004). Such a motion may only be granted where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.*

### B. Qualified Immunity

While we generally agree with the District Court's thorough analysis, the clearest resolution for us of the issues raised on appeal is provided under the doctrine of qualified immunity. It generally protects government officials performing discretionary functions from civil damages. Qualified immunity is not a mere defense from liability; it is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the Supreme Court has stressed the importance

4

of resolving immunity questions at the earliest possible stage of litigation. *See, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Claims of qualified immunity are evaluated using a two-step process: that is, the court must first determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation, and, if so, whether the constitutional right at issue was clearly established at the time of the alleged violation. *Brosseau v. Haugen*, 543 U.S. ___, 2004 WL 2847251, at *2-3 (2004); *Bennett v. Murphy*, 274 F.3d 133, 136-37 (3d Cir. 2001). "A right is clearly established if its outlines are sufficiently clear that a reasonable officer would understand that his actions would violate the right." *Sterling v. Borough of Minersville*, 232 F.3d 190, 193 (3d Cir. 2000).

For the reasons explained by the District Court, Mr. Neuburger's arguments in support of a violation of his wife's constitutional rights are unpersuasive. Moreover, even assuming that the facts alleged by Mr. Neuburger could establish a violation of her constitutional rights, those rights were not clearly established.

As to the first prong of *Saucier*, Mr. Neuburger contends that, in view of the totality of the circumstances from the moment the officers arrived on the scene to the instant Trooper Thompson shot Ms. Neuburger, the "encounter in this case was brought swiftly to a head and became confrontational only because the state police chose" to make it so. Unable to cite any case holding conduct similar to the troopers' unlawful, Mr. Neuburger primarily rests on the Fourth Amendment right to be free from excessive

5

force.  He seeks support by analogy from the state-created danger doctrine.  According to this doctrine, which arises from the Fourteenth Amendment's Due Process Clause, the state can be responsible for an injury to a person if the state plays a part in the danger or renders the person more vulnerable to such danger.  *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).[1]

We recognize the Supreme Court indicated in *Hope v. Pelzer*, 536 U.S. 730 (2002), that in some cases "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *Id.* at 741 (quoting *U.S. v. Lanier*, 520 U.S. 259, 263 (1997) (citation omitted)).  Our case law establishes the general rule that a trooper violates an individual's Fourth Amendment rights by employing deadly force when that individual does not pose an immediate threat

---

[1]Mr. Neuburger has indicated that the "appropriate analysis for this case is that provided by the Fourth Amendment reasonableness requirements for the use of deadly force" and not the analysis employed under the state-created danger doctrine.  Appellant's Br. at 27.  But even assuming that Mr. Neuburger's complaint can be construed as alleging an independent claim under the state-created danger doctrine, it is not supported by the factual allegations in the complaint.  As the District Court correctly concluded, the complaint fails to allege that the troopers acted with gross negligence or arbitrariness that "shocks the conscience." *See Smith v. Marasco*, 318 F.3d 497, 509 (3d Cir. 2003) (explaining that "except in those cases involving either true split-second decisions or, on the other end of the spectrum, those in which officials have the luxury of relaxed deliberation, an official's conduct may create state-created danger liability if it exhibits a level of gross negligence or arbitrariness that shocks the conscience").

to the safety of the trooper or others. *See Bennett*, 274 F.3d at 136. But here there is no persuasive argument that it was objectively unreasonable to respond with deadly force when Ms. Neuburger, who had refused to follow directions to put down her weapon, pointed a handgun at an officer.

Mr. Neuburger correctly points out that an overwhelming show of force that shocks the conscience may also amount to a constitutional deprivation under the state-created danger doctrine. *See Smith*, 318 F.3d 497 (holding that summary judgment under state-created danger theory was precluded where special emergency response team, including approximately thirty officers and an overhead helicopter, flushed suspect known to have psychological and medical infirmities from his home and confined him in a densely wooded area, allegedly causing him to suffer a fatal heart attack). Mr. Neuburger argues that *Smith* and other cases decided under the state-created danger doctrine, when read in connection with the Fourth Amendment's requirement that an officer's use of force be objectively reasonable, reveal that a situation in which deadly force becomes necessary because of the troopers' own actions can make out a constitutional violation.

In making this argument, Mr. Neuburger is in effect attempting to blend the state-created danger doctrine with the analysis governing Fourth Amendment excessive force claims. Our Court has considered but not adopted this approach. Specifically, in *Abraham v. Raso*, 183 F.3d 279 (1999), we discussed decisions from other circuit courts

7

offering that, in limited circumstances, an officer's acts creating the need for force may be important in evaluating the reasonableness of that officer's eventual use of force. 183 F.3d at 295-96. But we left "for another day" whether such an approach should be followed. *Id*. at 296. *See also Grazier v. City of Philadelphia*, 328 F.3d 120, 129 (3d Cir. 2003) (concluding that "our Circuit has not adopted" the position that an officer's conduct that "unreasonably precipitated the need to use deadly force" may show that the subsequent use of deadly force violates the Fourth Amendment). Thus, Mr. Neuburger's assertions advocate a rationale that has not been accepted in our Circuit. As this is not the case to adopt that rationale, Mr. Neuburger's complaint does not allege the violation of a clearly established constitutional right, and therefore the troopers are entitled to qualified immunity.

### C. Remaining Claims

On appeal, Mr. Neuburger has not challenged the District Court's dismissal of the claims based upon allegedly unconstitutional conduct as supervisors against defendants Conley and Hample, who were not present at the scene of the shooting. Any such challenge thus has been waived. *See Wisniewski v. Johns-Manville Corp*., 812 F.2d 81, 88 (3d Cir., 1987) ("An issue that is not addressed in an appellant's brief is deemed waived on appeal."). Lastly, the District Court's decision not to exercise supplemental jurisdiction over the state law claims was within its discretion, and in any event is not challenged on appeal.

### III. Conclusion

As the District Court stated, the shooting of Ms. Neuburger was "undeniably tragic." But no federal claim is based on a clearly established constitutional right. In that context, and because the other arguments were waived (with reason, we add), we affirm the District Court's judgment.