

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-10-2006

# N Amer Dealer Coop v. Interstate Indemnity

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1453

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"N Amer Dealer Coop v. Interstate Indemnity" (2006). *2006 Decisions.* Paper 1133.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1133

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1453

———

NORTH AMERICAN DEALER CO-OP;
NATIONAL ADMINISTRATIVE DEALER SERVICES, INC.

Appellants

v.

INTERSTATE INDEMNITY COMPANY

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 04-cv-3609)
District Judge: Honorable John R. Padova

———

Argued April 21, 2006

Before: McKEE, BARRY, and VAN ANTWERPEN, Circuit Judges.

(Filed May 10, 2006)

Fred A. Greenberg (Argued)
111 Forrest Avenue
Narberth, PA 19072

*Counsel for Appellants*

James A. Keller (Argued)
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor

Philadelphia, PA 19102

*Counsel for Appellee*

———

OPINION OF THE COURT

———

VAN ANTWERPEN, Circuit Judge.

Appellants, a co-op and its program administrator, who offer automobile dealers refunds on unused extended service contracts, seek review of the District Court's grant of appellee insurance company's motion to dismiss. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we will affirm.

I.

Because we write solely for the benefit of the parties, we state the facts only as they pertain to our analysis.

The North American Dealer Co-op ("NADC") is a Colorado corporation that provides its members, automobile dealers, with the ability to sell to consumers extended service contracts with money-back guarantees. If the consumer does not file a claim under the extended service contract, the consumer receives a refund from the dealer. The dealer then receives a refund from NADC. NADC maintained a reserve of funds for this purpose, and also bought insurance to cover any shortfalls. Through its administrative company, National Administrative Dealer Services, Inc. ("NADS"), also a Colorado corporation, NADC purchased this insurance, a "Vehicle Service Contract Reimbursement Guarantee Policy."

2

from the Interstate Indemnity Company ("Interstate"), an Illinois corporation.

The insurance policy ("the Policy") forms the heart of this dispute, and we will therefore describe it in some detail. The Policy went into effect on April 1, 2001. While almost all insurance policies set a finite policy period, Interstate filled in the blanks on the Policy's declaration page to read, under the Item 2 heading, Policy Period, "FROM: April 1, 2001. TO: Continuous Until Cancelled."

Paragraph 17 of the Policy, entitled CANCELLATION OF THE POLICY, reads in pertinent part:

"A.     Cancellation by the Company
This policy may be cancelled by the Company for non-payment of premium by mailing written notice of such cancellation to the Named Insured . . . at least ten (10) days prior to the effective date of such cancellation. The Company may cancel this policy for any other reason by mailing written notice . . . at least ninety (90) days prior to the effective date of such cancellation.
If the policy has been in effect for more than sixty (60) days, it may be cancelled by the Company only for one of the following reasons:
        1. Non-payment of premium;
        2. Material increase in the risk;
        3. Any fraudulent act, material misrepresentation or false statement knowingly
        made by the Named Insured, any Member, and/or the Program Administrator.
The effective date of cancellation stated in the notice shall become the end of the policy period. . . .

B.     Non-Renewal by the Company
This policy may be non-renewed by the Company by mailing written notice of such non-renewal to the Named Insured at the address shown in Item 1 of the policy Declarations at least ninety (90) days prior to any policy expiration or anniversary date. . . .

C.     Cancellation by the Insured
The Named Insured shall have the right to cancel this policy by surrendering the policy to the Company or by mailing to the Company written notice of its intent to do

3

so. Any such written notice must specify the effective date of cancellation by the Insured. The time of surrender by the Named Insured or the effective date of cancellation stated in the notice shall become the end of the policy period. . . .

D.     Non-Renewal by the Insured
The Named Insured may non-renew this policy by mailing a notice of non-renewal intent to the Company prior to any policy expiration or anniversary date. Failure by the Named Insured to provide any renewal information and/or any [of] the renewal premium requested by the Company prior to the policy expiration or anniversary date shall be considered notice of intent by the Named Insured to non-renew this policy. . . .

In the event of cancellation or non-renewal, the Company, Named Insured, Program Administrator, and/or any Members shall remain liable for all of their respective duties and obligations hereunder with respect to Guarantees effective and originated prior to the date of cancellation or non-renewal."

Interstate drafted the Policy and all declaration pages, and filled in any relevant blanks in the Policy form.

The Policy remained in full effect without incident until December 2003. In a letter, Interstate informed NADS, the administrator, that "the policy for the North American Dealer Co-Op is being cancelled effective April 1, 2004, per the terms of that contract. All duties required by this contract will be in force until the contract non-renews." The letter was accompanied by a Notice of Nonrenewal of Insurance, stating: "We will not renew this policy when it expires. Your insurance will cease on the Expiration Date shown above [04/01/2004]. The reason for nonrenewal is PROGRAM IS NO LONGER AVAILABLE." The letter was also sent to one of NADC's agents, which stopped writing NADC policies. On April 15, 2004, NADC notified Interstate that it believed the cancellation was ineffective,

4

null, and void. When negotiations failed, NADC and NADS filed this diversity suit[1] against Interstate, alleging, *inter alia*, breach of contract due to wrongful cancellation, and seeking damages and a declaratory judgment. Interstate filed a motion to dismiss the Complaint under Fed.R.Civ.P. 12(b)(6).

On November 16, 2004, the District Court granted the motion to dismiss in part, ruling that although under Colorado contract law insurance contracts are construed against insurers in case of ambiguity, the contract was unambiguous and permitted Interstate to cancel by non-renewal. The District Court dismissed all claims based on an alleged wrongful cancellation of the policy, but denied Interstate's motion as to the remaining claims. On February 4, 2005, pursuant to a settlement between the parties, the District Court dismissed all of the remaining claims, and made its November 16, 2004, Order final for purposes of appeal.

## II.

We exercise de novo review over the grant of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and apply the same standard as required of the District Court: "[A]ccept[ing] all well-pleaded allegations in the complaint as true, and view[ing] them in the light most favorable to the plaintiff," we will grant the motion if "it appears beyond doubt

---

[1] NADC and NADS are Colorado corporations with principal places of business in Colorado. Interstate is an Illinois corporation with principal place of business in California. The Complaint alleged damages in excess of $75,000. The District Court therefore had jurisdiction under 28 U.S.C. § 1332.

5

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004).

## III.

We apply Pennsylvania's choice of law rules, which provide that an "insurance contract is governed by the law of the state in which the contract was made. An insurance contract is 'made' in the state in which the last act legally necessary to bring the contract into force takes place. In most cases, this last act is delivery of the policy to the insured and the payment of the first premium by him." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 360-61 (3d Cir. 2004) (citations and quotation marks omitted). Here, given that the insurance policy at issue was delivered to NADC and NADS (collectively, "appellants") at their Colorado offices, we agree with the District Court and the parties that Colorado law applies.[2]

## IV.

The District Court held that even though the Policy states that it is "Continuous Until Cancelled," Interstate was unambiguously permitted to "cancel" the Policy by "non-renewal." Appellants argue that "cancellation" cannot be read as synonymous with "non-renewal," and therefore that Interstate wrongfully cancelled the Policy because "cancellation" as defined by the Policy required cause. Interstate does not allege that any of the for-cause provisions of ¶ 17.A apply, and instead argues that because ¶ 17 overall is titled "Cancellation of the Policy," that paragraph encompasses both the "Cancellation" and "Non-Renewal"

---

[2]Both parties noted their agreement at oral argument.

6

subparagraphs A-D, and Interstate could accordingly "cancel by non-renewal." We agree with the District Court that the Policy unambiguously permitted Interstate to terminate the Policy by complying with the non-renewal provision of ¶ 17.B.

"An insurance policy is merely a contract that courts should interpret in line with well-settled principles of contract interpretation." Cyprus Amax Minerals Co. v. Lexington Ins. Co., 74 P.3d 294, 299 (Colo. 2003). Under Colorado law, if there is an ambiguity in an insurance contract, it must be construed against the insurer. Id. Courts "should give the words contained in the [insurance] contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy." Id. Appellants have not met their burden of showing an ambiguity in the terms of the Policy.

While the Policy is far from a model of clear drafting, its dual use of "cancellation" does not create an ambiguity. "[A]lthough a term used in a contract is ambiguous when it is susceptible to more than one reasonable interpretation, a mere potential for more than one interpretation of such term considered in the abstract, does not create an ambiguity." Allstate Ins. Co. v. Juniel, 931 P.2d 511, 513 (Colo. App. Ct. 1996) (citations omitted). Rather, the Policy groups several methods of termination together under a single heading, "Cancellation of the Policy." We agree with the District Court that the Policy term, "Continuous Until Cancelled," logically refers to the intent of the parties to use "cancellation" in a broad sense, as in the capitalized, bold-faced heading of ¶ 17. To conclude otherwise, we would be forced in essence to read out various terms of the Policy. The Policy unambiguously permitted

7

Interstate to use this method of cancellation; therefore, appellants' breach of contract claims fail as a matter of law.

V.

We conclude that appellants have not met their burden of showing an ambiguity in how the Policy uses the term "cancellation." We will accordingly affirm the District Court's grant of Interstate's motion to dismiss under Fed.R.Civ.P. 12(b)(6). We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary.