**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 09-3053

———————

DB ENTERPRISE DEVELOPERS & BUILDERS, INC,
Appellant

v.

NICHOLAS A. MICOZZIE, in his individual capacity;
THOMAS MICOZZIE, in his individual capacity;
UPPER DARBY TOWNSHIP

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 08-cv-05076)
District Judge:  Honorable Stewart Dalzell

———————

Submitted Under Third Circuit LAR 34.1(a)
September 14, 2010

———————

Before: SLOVITER, BARRY and SMITH, Circuit Judges

(Opinion Filed: September 17, 2010)

———————

OPINION

———————


BARRY, Circuit Judge

D.B. Enterprise Developers & Builders, Inc. ("DB") appeals from the judgment of

the District Court dismissing its 42 U.S.C. § 1983 claim. DB alleges that defendants forced it to undertake expensive sewer construction on public roadways by threatening to disrupt DB's development of a private parcel of land if it failed to do so. We will affirm.

## BACKGROUND[1]

In 2004, DB sought to develop for residential use a parcel of land adjacent to Bishop Avenue in Springfield, Pennsylvania known as Springfield Knoll. Bishop Avenue also borders Upper Darby, Pennsylvania, and DB claims that Upper Darby, along with its state representative, Nicholas Micozzie ("Nicholas"), and Thomas Micozzie ("Thomas"), who currently serves as its Mayor, repeatedly "demanded that DB perform [offsite] work on the Upper Darby side of Bishop Avenue." (App. at 9.) According to DB's president, Davoud Baravordeh, Nicholas promised "state funding and/or materials for purposes of this construction," but also warned that unless Baravordeh agreed to carry out these demands, Nicholas would use his "political power to shut down work on the entire Springfield Knoll project." (*Id.* at 10.) Nicholas explained that the construction work "was important to Thomas Micozzie's upcoming election bid for Upper Darby Township Council." (*Id.*)

DB spent $180,000 in construction work related to sewers along Bishop Avenue in Upper Darby, and was not reimbursed for its work. Nicholas and Thomas also demanded

---

[1] Given the parties' familiarity with this case, we set out the facts in summary fashion, accepting "all well-pleaded allegations in the complaint as true, and view[ing] them in the light most favorable to the plaintiff." *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir. 2004).

that unless DB perform work on the sidewalks and curbs along Bishop Avenue without reimbursement, they would "shut down" work on Springfield Knoll. (*Id.* at 11.) On October 22, 2007, the same day that Nicholas scheduled a meeting that Baravordeh failed to attend, three Pennsylvania Department of Transportation ("PennDOT") "officials arrived "at the Springfield Knoll construction site and . . . abruptly commanded Mr. Baravordeh to stop work on the project on several pretexts" and "trivial excuse[s]."[2] (*Id.* at 12.) Later that week, PennDOT officials demanded that unless DB replaced all curbs and sidewalks on the Upper Darby side of Bishop Avenue at no cost, the Springfield Knoll project would be shut down "permanently." (*Id.*) DB reluctantly agreed to comply, but the complaint does not allege that DB, in fact, performed any work on those curbs and sidewalks. DB claims that PennDOT officials – at the behest of the Micozzies – continue to harass and pressure it to complete free work for Upper Darby.

DB filed a two-count amended complaint in the District Court naming as defendants both Thomas and Nicholas, in their individual capacities, and Upper Darby Township. In Count 1, a claim under 42 U.S.C. § 1983, DB alleged that defendants violated its 14th Amendment due process rights by engaging in "arbitrary and outrageous government interference" with its business by "forcing" it to perform work outside of Springfield Knoll without payment. (*Id.* at 13-14.) DB sought as damages the costs of

---

[2] This turn of events was surprising to DB because a PennDOT official had visited Springfield Knoll each work day from July through October, always approving of DB's progress.

performing work for Upper Darby, which the complaint quantifies as approximately $180,000 in sewer construction. In Count 2, DB claimed unjust enrichment under state law.

On June 18, 2009, the District Court granted defendants' motions to dismiss. As to Count 1, it granted Upper Darby's unopposed motion, and granted Thomas' motion after finding no connection between Thomas and the sewer construction, which was "the only unlawfully coerced work DB alleges it has done." (*Id.* at 24.) The Court also found that Nicholas's threats to use his political influence to derail the Springfield Knoll project did not shock the conscience such that they violated DB's constitutional rights. It declined to exercise supplemental jurisdiction over Count 2. DB timely appealed.

### DISCUSSION[3]

DB argues that both Nicholas and Thomas Micozzie violated its substantive due process rights by forcing it to choose between performing $180,000 in sewer construction or having its development at Springfield Knoll disrupted.[4] Our review of the District Court's order granting the motions to dismiss is plenary. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). To survive a motion to dismiss, DB must "allege facts that raise a right to relief above the speculative level on the assumption that the allegations in the

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

[4] This appeal does not concern Count 2 of the Complaint, and DB does not challenge the District Court's ruling granting Upper Darby's motion to dismiss Count 1.

complaint are true (even if doubtful in fact)." *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (internal quotations and citation omitted).

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (citing *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400-02 (3d Cir. 2003)). We have previously held that "real property ownership" is an interest entitled to substantive due process protection, *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 141 (3d Cir. 2000), where the government conduct is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," *Kaucher v. County of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006).

DB's complaint alleges that defendants, through articulated threats and unfulfilled promises, forced it to perform sewer construction in exchange for the right to develop Springfield Knoll without interruption.[5] DB had a property interest in Springfield Knoll worthy of substantive due process protection. That having been said, however, and as

---

[5] As the District Court noted, DB's complaint fails to allege any facts connecting Thomas to Nicholas's demand that DB perform sewer work. Nor does the complaint allege any facts in support of DB's assertion to us that "since Thomas was present when Nicholas made some of these threats, it is fair to allege that Thomas and Nicholas conspired to violate DB's rights through extortion." (Appellant's Br. at 8-9.) Absent sufficient factual allegations of a conspiracy, we are "not required to accept legal conclusions alleged in the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). Accordingly, the District Court did not err in granting Thomas's motion to dismiss Count 1.

shameful as Nicholas's alleged conduct is – allegations we are required to accept as true – DB has failed to state a substantive due process claim. First, DB does not allege that Nicholas's coercion with reference to the sewer construction interrupted its operations at Springfield Knoll. The complaint alleges that on October 22, 2007, "PennDot officials appeared at the Springfield Knoll construction site and, without any legal basis, abruptly commanded Mr. Baravordeh to stop work on the project on several pretexts," but PennDOT is not a defendant here. (App. at 12.) Even had PennDOT been acting "in concert with and/or at the direction of" Nicholas, its actions on October 22 concerned the demand – conveyed shortly thereafter at a meeting on October 24 – that DB replace curbs and sidewalks. (*Id*. at 11-12.) Accordingly, DB has not set out a factual basis for the claim that it was denied the use and enjoyment of its property as a result of the sewer-related coercion.

Even assuming that Nicholas's threats did interfere with DB's use and enjoyment of its property, such "[d]eprivation violates due process only when it 'shocks the conscience,'" an extremely difficult standard to meet. *See Chainey*, 523 F.3d at 219 (quoting *United Artists*, 316 F.3d at 400) (quotations omitted). In *Eichenlaub v. Township of Indiana*, we found that the township's efforts in selectively enforcing zoning laws, pursuing unannounced and unnecessary inspections, and improperly increasing tax assessments were not such that they shocked the conscience, particularly because there were no allegations that the defendants were motivated by corruption, self-dealing, or bias

against a particular ethnic group. 385 F.3d 274, 286 (3d Cir. 2004). Nicholas's conduct here is comparable to the conduct that we found to be less than conscience-shocking in *Eichenlaub*. To the extent that DB claims that the case before us "clearly involves corruption and self-dealing," its complaint does little to support such a contention. (Appellant's Br. at 12.) Indeed, there is no allegation that Nicholas had a financial or ownership interest in Bishop Avenue's sewers or their environs, and the only benefit to Nicholas that DB alleges is that Thomas's political ambitions would be furthered by the improvement of those sewers and their environs.

DB attempts to distinguish its case from those cited by the District Court in support of the Court's holding that Nicholas's threats do not shock the conscience. We note just one. In *Corales v. Bennett*, the Court of Appeals for the Ninth Circuit found that a school official's threats to students that they would face fines and juvenile hall sentences were not threats "egregious enough to shock the conscience." 567 F.3d 554, 568 (9th Cir. 2009). DB claims that in *Corales*, "the students were threatened and nothing more, while DB was threatened *and* forced to perform $180,000 of work on the basis of the threat." (Appellant's Br. at 12-13.) Nicholas's threats, however, were no more egregious than those in *Corales*, and at no point was DB stopped from developing Springfield Knoll as a result of the threat concerning sewer construction. We conclude, therefore, that Nicholas's coercion of DB to perform services to benefit Upper Darby's sewer system and his false promise of reimbursement with state funds are not such that

they shock the conscience.

Having found that DB was not restricted in its use and development of Springfield Knoll as a result of Nicholas's sewer-related threats and false promises, and that those threats and promises were not such that they shock the conscience, we conclude that the District Court appropriately granted the motions to dismiss.[6]

**CONCLUSION**

We will affirm the judgment of the District Court.

---

[6] Given this disposition, we need not address the issue of sovereign immunity.